GAYLON C. JACKSON and LUCILLE A. JACKSON, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Jackson v. Commissioner
Docket Nos. 3917-79, 7797-79.
United States Tax Court
T.C. Memo 1982-556; 1982 Tax Ct. Memo LEXIS 190; 44 T.C.M. (CCH) 1213; T.C.M. (RIA) 82556; September 23, 1982. Michael E. Zadan, for the petitioners. James J. Posedel, for the respondent. *191 SCOTT MEMORANDUM FINDINGS OF FACT AND OPINION SCOTT, Judge: Respondent determined deficiencies in petitioners' income taxes for the calendar years and in the amounts as follows: Deficiencies
Tax Year Ended
in
December 31
Income Tax
1971
$ 1,020
1972
591
1973
1,120
1974
6,576
1975
9,141
1976
9,594
1977
13,120
Some of the issues raised by the pleadings have been disposed of by agreement of the parties leaving for decision (1) whether there was a second inspection of petitioners' books and records for the years 1971 through 1974 in violation of section 7605(b), [1] and, if so, does this fact bar respondent from asserting deficiencies for these years; (2) whether petitioner, Gaylon C. Jackson, is entitled to investment credits under section 46(e)(3) with respect to certain medical equipment leased to chiropractors in the Southern California area; and (3) whether petitioners are entitled to deduct automobile expenses of $769 for the year 1973. FINDINGS OF FACT Some of the *192 facts have been stipulated and are found accordingly. Petitioners, Gaylon C. Jackson and Lucille Jackson, husband and wife, who resided in San Diego, California, at the time of the filing of each of the petitions in this case, filed joint Federal income tax returns for the calendar years 1971, 1972, 1973, 1974, 1975, 1976, and 1977. Petitioners filed an amended return for each of the years 1971 and 1972 and a second amended return for the calendar year 1972. On April 28, 1975, petitioners filed a claim for refund, based upon a claimed investment credit carryback to the year 1971, for an investment credit incurred with respect to medical equipment during the year 1973 which was stated in the claim to have been incorrectly carried forward to the year 1974. By letter dated June 12, 1975, the director of the Fresno Service Center advised petitioners that their claim had been partially allowed in the amount of $447.50. In an initial audit of petitioners' income tax returns for the calendar years 1971 through 1974, respondent determined, based on reports of individual income tax audit changes dated October 2, 1975, that petitioners had overpaid their income taxes for the years *193 1971, 1972, and 1974 in the amounts of $2,875, $3,234, and $1,114, respectively, and were entitled to refund of these amounts. Based on a report of individual income tax audit changes dated August 22, 1975, a determination was made that petitioners had overpaid their income tax for the calendar year 1973 in the amount $4,207 and were entitled to a refund of this amount. Respondent closed the years 1971 through 1974 on the basis of the determination in the reports of individual income tax audit changes. However, prior to the refunding of the overpayments determined to be due to petitioners in those audit changes, an auditor in respondent's office, Delores Tilley, was assigned to re-examine the determination made in the reports of individual income tax audit changes for petitioners' calendar years 1971 through 1974. Since the files had previously been closed in respondent's office, Ms. Tilley initiated a reopening memorandum requesting approval to reopen a closed examined case, and the issuance of a Form L-153, Notice of Re-examination. Final approval for the reopening of petitioners' returns for the years 1971, 1972, 1973, and 1974 was granted under date of March 31, 1976. *194 Under date of April 14, 1976, a letter was sent to Mr. and Mrs. Jackson by the acting district director of Internal Revenue Service, Los Angeles, California, with respect to their taxable years ending December 31, 1971, 1972, 1973, and 1974, the body of which stated as follows: We are required by law to notify a taxpayer in writing if we need to reexamine his books and records after previously examining them. Because information that may affect your tax liability has been developed since our latest examination of your books and records, we ask that you make them available to us again, for reexamination. Thank you for your cooperation. Upon examining the information in the files in the office of the district director, Ms. Tilley found that all information needed to redetermine petitioners' tax liabilities for the years 1971 through 1974 was available from the prior audit and no representative of respondent ever requested to, or did, re-examine any of petitioners' books or records after the reopening of the years 1971 through 1974. No requests were made to petitioners or their representatives for any further documentation or information. Gaylon C. Jackson (petitioner) *195 is a retired United States Army officer. In 1970, he had some available cash which he had received upon the sale of an apartment building. Petitioner answered a newspaper advertisement which stated that Physicians Service Co. was looking for capital which would be used to acquire equipment to be leased to some chiropractors. Physicians Service Co. was a name which was used at times by California Business Engineering, Inc. (CBEI), in connection with the leasing of chiropractic equipment. Petitioner went to the offices of CBEI and spoke with representatives of that corporation. Petitioner told the representatives of CBEI that he had some money which he might be interested in using in the arrangement they were suggesting. During the period 1971 through 1977, and for some time prior to 1971, CBEI had been entering into contracts with chiropractors for the lease to the chiropractors of medical equipment. In 1972, Melvin Allison, who had previously been employed by CBEI in selling, installing and servicing equipment, took over as president of CBEI. When Mr. Allison took over as president, he continued to use the same form of leases that had been previously used by CBEI in leasing *196 equipment to chiropractors. When Mr. Allison or some other representative of CBEI had interested a chiropractor in leasing equipment, Mr. Allison would contact petitioner to see if he wished to participate in the transaction. [2] At times, if the equipment was not expensive by CBEI's standards, CBEI would have the equipment on hand and might or might not discuss with petitioner his participation in the transaction. In large transactions, generally CBEI would have to arrange to purchase the equipment and, under these circumstances, would contact petitioner and propose the transaction to him prior to purchasing the equipment. Generally, when a chiropractor agreed to enter into a lease with CBEI, he would be required to pay the first and last two months' rent, or at times the first month's and the last month's rent. Mr. Allison would obtain a check for this amount when the chiropractor agreed to lease the equipment. Mr. Allison considered this two or three months' rent as in the nature of a binder of the agreement and this payment was retained by CBEI. If petitioner decided to participate in a transaction Mr. Allison brought to him, he would advance the necessary funds to CBEI, *197 which would then purchase the equipment or, in some instances, place in the chiropractor's office equipment it had on hand. The purchase orders for equipment and the checks in payment of the equipment were always done in the name of CBEI. The following is one of the leases between CBEI and a chiropractor, which, except for the list of equipment, name of the lessee, and amounts of rental is the same as most of the other leases: California Business Engineering, a corporation existing under the laws of the State of California, with its principal place of business in San Diego, California hereinafter called "LESSOR", DOES HEREBY LEASE UNTO: [Doctor's Name] [Office Address] Hereinafter called "LESSEE", the following items of personal property, together with any substitutions, replacements, improvements and renewal parts hereafter delivered by or on behalf of lessor to lessee, all of which are hereafter referred to as the…. "LEASED PROPERTY": As per attached listing *198 of office furniture and equipment identified as "Schedule A" and "Schedule B" The leased property will at all times be located at the following address: [Office Address] This lease is upon the conditions hereinafter set forth: 1. TERMOFLEASE. The term of this lease shall commence on April 27, 1973 and shall continue in full force and effect for an original term of 60 months and continuously thereafter unless or until lessee shall terminate the same as of any anniversary of the end of the original term. To effect termination the lessee must give written notice to lessor at least (30) thirty days prior to the date as to which such termination is to be effective. 2. RENT. Lessee agrees to pay each month, as rent for the property, 60 at $300.00 per month.     at $     per month.     at $     per month.     at $     per month.     at $     per month. Lessor hereby acknowledges receipt of the rent for the first month and last 1 month(s) totaling, 600.00 (amount paid herewith). Lessee is hereby granted the option to obtain a new one year lease on the same terms and conditions herein set forth at: a rental of *199 $120.00 per month, payable for 12 months. A rental of $60.00 per month, payable for 12 months. A rental of     per month, payable for     months. A rental of     per months, payable for    months. Said option may be exercised by lessee giving written notice to that effect, which notice shall be delivered to lessor no less than thirty (30) days before this expiration of the term hereof. The rental payable for such new lease shall be that specified in this paragraph. This lease is made subject to all terms and conditions printed on the reverse side hereof. In witness whereof, the parties have signed their names hereto. All blanks were filled in before lessee(s) signed. Trade, Partnership, or Corporate Name By [Name] Title By Title (signed) Melvin H. Allison, Accepted By CALIFORNIA BUSINESS ENGINEERING CORP., Box 3725 Hillcrest Station, San Diego, California 92103 Remarks: Next Payment due June 6, 1973 A % 5 service charge will be added to all payments 15 days late. Shortly after the execution of the lease between the chiropractor and CBEI, the following document would be delivered by CBEI to petitioner: FOR VALUE RECEIVED, *200 the undersigned does hereby sell, assign and transfer to Col. G. C. Jackson, with full recourse, all its rights, title, and interest in and to the equipment listed on the lease between the undersigned, as Lessor, and [Doctor's name] as Lessee, executed on      , together with all of the personal property thereby leased and all moneys to become due thereunder. The undersigned warrants that it is the sole and absolute owner of the said personal property and that said personal property is free and clear of all liens, encumbrances, or adverse claims whatsoever except these rights of the Lessee. The undersigned also warrants that it has the right to make this assignment, and agrees to hold the assignee harmless from any losses, counterclaims, or offset resulting from any actual or claimed failure on its part to fulfill its obligation under said lease or otherwise. The undersigned authorizes the assignee or its successors or assigns to do every act and thing necessary to collect and discharge the said lease, including the right to endorse any check or draft payable to the undersigned in connection with the said lease. The undersigned agrees that in the event of breach of *201 any term of the lease by the Lessee, the assignee, or assigns, shall have the right to recover from the undersigned the unpaid portion of the money advanced to Lessor plus interest at ten percent (10%) per annum computed monthly or the Lessor agrees to place said leased equipment with other acceptable Lessee without charge, or may at public sale sell said personal property, apply the proceeds to such amount due and recover any deficiency thereof from the undersigned. At the expiration of the 60 Months of said lease, and provided all rents due thereunder, have been paid in full to Col. G. C. Jackson this assignment shall be null and void and of no further force and effect, and title to said personal property and lease shall revest in the undersigned. CALIFORNIA BUSINESS LEASING Division of California Business Engineering A California Corp. By [signed], Melvin H. Allison DATE 5-1-73 It is further agreed that I/We shall personally guarantee this obligation, to be paid in full. By [signed], Melvin H. Allison By [signed], Norma M. Allison The determination of the amount to be paid by petitioner would be on the basis of the retail price of the equipment being *202 leased, and from this retail price would be deducted the amount of the two or three months' advance rental paid, to arrive at the price that petitioner paid to CBEI. [3]
CBEI filed with the Secretary of State of the State of California a document recording the lease of the equipment. This document stated: "This FINANCING STATEMENT is presented for filing pursuant to the California Uniform Commercial Code." The name of the lessee of the equipment and his address and social security number appeared on the form. Under "Secured Party" appeared the name of CBEI with its address, and under the designation "Assignee of Secured Party (if any)" appeared petitioner's name and address. Below petitioner's name on the form was the statement that the financing statement "covers the following types or items of property." Under this designation would be listed the property which was the subject of the lease. If a piece of equipment was injured during delivery *203 and the damage was not completely covered by insurance, CBEI was responsible for the cost of any such damage. If a lessee of the equipment failed to make a rental payment when due, CBEI was responsible for and did pay petitioner. CBEI would take whatever action was necessary to recover the amount from the doctor-lessee. The equipment placed in the various chiropractors' offices was generally factory guaranteed for one year. However, the factory usually required that the equipment be returned for repair or replacement at the cost of the purchaser. Under the agreement that CBEI had with the lessee-chiropractor, the equipment was repaired or replaced by CBEI through the seller of the equipment for one year and thereafter the lessee was required to make all necessary repairs on the equipment as well as to keep the equipment insured. Mr. Allison estimated that, on the average, the two to three months' advance payment was about a correct amount for whatever cost CBEI incurred during the first year in keeping the equipment repaired under its guarantee. Under the terms of the lease, the equipment was to be maintained so that at the end of the 60-month prime term of the lease it was *204 in working condition less normal wear and tear. At the end of the initial 5-year term of the lease, the equipment would at times be continued under lease to the same lessee for the additional year or 2 years specified in the lease. In such event, the monthly rental for the additional period was paid to CBEI. If the lessee did not opt to continue the rental for an additional year or two, CBEI would take the equipment. At times CBEI would sell the equipment to the lessee-chiropractor and at times CBEI would actually pick the equipment up and attempt to either sell it elsewhere or make another lease of the equipment. At times, CBEI would write a new lease for equipment with the chiropractor whose 5-year term of the lease had been completed, using some of the equipment he previously had leased and some new equipment. In any event, CBEI, at the end of the 5-year period, did with the equipment whatever it saw fit to do. *205 Soon after Mr. Allison became president of CBEI, he had a discussion with petitioner about investment tax credit. When petitioner first mentioned investment tax credit to Mr. Allison, Mr. Allison did not understand what the credit was. However, because CBEI had accumulated deficits, Mr. Allison was not interested in other tax writeoffs and he told petitioner that, if he was eligible for the investment tax credit, he could have it. During the 5-year primary period of the lease, the chiropractors made their monthly rental payments, other than the initial payments, to a bank, which acted as a collection agent for petitioner. [4]
On their original returns filed for the years 1971 and 1972, petitioners did not claim an investment credit with respect to the medical equipment leased to the chiropractors. On their amended returns, filed for the calendar years 1971 and 1972 in April 1974, petitioners did claim an investment credit on this equipment. On their original returns filed for 1973 and 1974, petitioners claimed an investment credit with respect to the medical equipment leased to chiropractors.
On their original returns filed with respondent for the years 1971, 1972, 1973 and 1974, *206 petitioners reported the amounts received from the chiropractors under the chiropractors' agreement with CBEI as interest income. On their returns for the calendar years 1975, 1976 and 1977, petitioners reported the amounts received from the chiropractors under the chiropractors' agreement with CBEI as rental income. On their 1975, 1976 and 1977 returns, petitioners claimed depreciation on medical equipment and claimed an investment credit on the medical equipment, which was the subject of the agreement between the chiropractors and CBEI. Respondent in his notice of deficiency to petitioners for the calendar years 1971, 1972, 1973 and 1974, disallowed for the year 1973 the amount of $769 claimed as travel expenses and also determined that petitioners did "not qualify to claim Investment Credit on leased medical equipment because it has not been established that you are the owner of such property." In his notice of deficiency to petitioners for the calendar years 1975, 1976, and 1977, respondent determined that petitioners did-- not qualify to claim Investment Credit in taxable years 1975, 1976 and 1977 on leased medical equipment because you have failed to establish ownership *207 of such property. Additionally, it has not been established that the claimed credit is allowable on such property under the provisions of the Internal Revenue Code. OPINION Section 7605(b) provides that no taxpayer shall be subjected to unnecessary examination or investigations, and that only one inspection of a taxpayer's books of account shall be made for each taxable year unless the taxpayer requests otherwise or the respondent, after investigation, notifies the taxpayer in writing that an additional inspection is necessary. [5]
Petitioners admit that no second inspection was made of their books of account or any of their records. However, they contend that since, administratively, respondent had closed their taxable years 1971, 1972, 1973, *208 and 1974 on the basis of a proposed refund of taxes, section 7605(b) operates as some form of statute of limitations to bar respondent from assessment or collection of deficiencies for those years. [6] Section 7605(b) refers to an inspection of a taxpayer's "books of account." Here, it is clear that no second inspection was made of any of petitioner's books. In fact, petitioner testified to this effect himself and Ms. Tilley testified that she requested no additional information from petitioner or any representative of petitioner, but made her redetermination of petitioners' tax liability for the years 1971 through 1974 from information that was in the file. As we pointed out in , affd. per curiam , "it is well settled that that section [sec. 7605] has no bearing upon the Commissioner's authority to examine tax returns already in his possession." The section prohibiting unnecessary examinations and a second inspection of a taxpayer's books and records without proper notice (sec. 7605(b)), was enacted "to prevent abusive and unnecessary inspections of a taxpayer's *209 books and records by the tax collector." , affd. as to another issue . It has no relationship to a redetermination of a taxpayer's tax liability from the information procured by an agent of respondent on his initial inspection of a taxpayer's books. In the instant case, respondent has not violated the provisions of section 7605(b). *210 Although apparently it was not necessary to do so, respondent did send to petitioners notice of a proposed second inspection as required by section 7605(b). The evidence shows that this notice was mailed on April 14, 1976. Petitioner testified that he did not remember receiving the letter. The years 1971 through 1974 were reopened by a memorandum requesting reopening. The request to reopen was properly approved by respondent's representatives. This record shows that respondent complied with the necessary procedures to conduct a second inspection of petitioners' records. Since there was no necessity for a second inspection of petitioners' records, representatives of respondent had no occasion to ascertain whether petitioners received the notice of necessity for a second inspection of their records. Clearly, in this case, the provisions of section 7605(b) have not been violated by respondent. See . The major issue in this case is whether petitioners are entitled to an investment credit with respect to the equipment placed in the offices of chiropractors under agreements entered into between the chiropractors *211 and CBEI. Section 38 allows a tax credit for investments in certain depreciable property referred to generally as "section 38 property." The type of property to which the investment tax credit applies is defined in section 48(a) and (b). There is no contention here that the equipment furnished to the chiropractors was not the type of equipment referred to as "section 38 property." It was tangible personal property of a type which would be subject to depreciation. The issue between the parties here is whether petitioner was the lessor of the property and, if so, whether he came within the provisions of section 46(e)(3) [7] which allows an investment credit with respect to a noncorporate lessor if the term of the lease including options to renew is less than 50 percent of the useful life of the property and for the period consisting of the first 12 months after the date on which the property is transferred to the lessee the deductions with respect to such property which are allowable to the lessor under section 162 exceed 15 percent of the rental income produced by such property. *212 It is respondent's position that petitioner was not the lessor of the property but rather that CBEI was the lessor. It is respondent's position that an assignment of the lease was made to petitioner and that the transfer of the property to petitioner was as security for the money he had advanced in financing the equipment which was the subject of the lease. Petitioner admits that the form of the documents whereby CBEI leased the equipment to the chiropractors and made an assignment of the property to petitioner for a period of 5 years was a secured financing of the leased property by petitioner. Petitioner argues, however, that the intent of the parties was that petitioner be the owner of the property and that therefore the form of the documents should be overlooked.
This Court has held on numerous occasions that where a taxpayer is attempting to establish a position which varies from the language of the written agreement to which he is a party, strong proof is required to show that the form of the agreement does not reflect its substance. ; ; *213 , affd. sub nom. . Where the agreement has some independent factual basis and relationship to business reality, a taxpayer is generally bound by the tax consequences which appear from the face of the agreement. See . There is a total lack of strong proof in this case that the form of the transaction does not comport with its substance. The evidence in fact indicates to the contrary. Petitioner argues that CBEI was its agent in negotiating the leases with the chiropractors. However, the evidence shows that Mr. Allison did all of the negotiations as an officer of CBEI and actually had a tentative agreement with the chiropractors before he came to petitioner to obtain the funds to purchase the equipment. The evidence also shows that in each incident petitioner's interest in the equipment ended with the expiration of the 5-year term of the lease. The evidence also shows that CBEI accepted full responsibility for the equipment's arriving in proper shape to be *214 installed in the chiropractor's office and for maintaining it for the first year. The evidence shows that at the end of the 5-year period when petitioner had received all payments due to him under the 5-year lease, the equipment became the sole property of CBEI. The evidence further shows that CBEI in each instance guaranteed the payment of the monthly rental amounts to petitioner for the full 5-year period and in case of any default by one of the lessees that CBEI made the payments to petitioner or made some arrangements for petitioner to be paid in full. On the basis of the record in this case, we hold that petitioner has failed to show that he was the lessor of the property to the chiropractors and therefore has failed to show that he is the individual entitled to any investment credit with respect to the property. [8]
Since we have determined that the agreement between petitioner and CBEI was basically a financing agreement with petitioner lending the money to CBEI to purchase equipment to be leased to certain chiropractors, it is not necessary *215 to further consider the provision of section 46(e)(3). Since petitioner was not the lessor of the property, he does not come within those provisions. However, in our view, it is also clear (1) that petitioner has failed to show that the 5-year initial term of the lease plus the 2-year renewal period was less than 50 percent of the useful life of the property, (2) that he was entitled to the deductions with respect to the upkeep of the property for the first 12 months for which 2 or 3 months' rentals were retained by CBEI, or (3) that the total amount of the advance rentals were used for repairs of the equipment. For these reasons, petitioner has failed to show that he meets the requirements of section 46(e)(3) even if he were considered to be the owner of the property. If petitioner was the own of the property as he contends, for only a 5-year period, the property was leased for its full useful life in petitioner's ownership. Furthermore, this record does not show that the property had a useful life of 14 years or more. The only testimony in the record in this respect is by Mr. Allison who testified that after the 5-year period when CBEI had full title to the property, it might *216 have a useful life of 5 more years or even 10 or more years depending on the equipment. No attempt was made to designate which property would have what useful life or the basis for Mr. Allison's opinion of the useful life of the property. A taxpayer is not entitled to investment credit as a noncorporate lessor unless he can show that he meets the conditions of section 46(e)(3) one of which is that the term of the lease not exceed 50 percent of the useful life of the assets with respect to which the taxpayer is claiming the investment credit. ; . Although petitioner did not directly concede that respondent properly disallowed the claimed deduction for automobile expense in 1973, he offered no evidence to substantiate this claimed deduction. We therefore sustain respondent's disallowance of petitioner's claimed automobile expense deduction in the amount of $769 for the year 1973. We have decided the only issues presented to us in this case for respondent. However, because of the numerous issues disposed of by agreement of the parties, Decisions will be *217 entered under Rule 155.
Footnotes
1. Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954, as amended and in effect during the years here in issue.↩
2. Other persons besides petitioner during the years here involved participated in the same type transaction with CBEI as petitioner, but we will confine our findings to petitioner's participation.↩
3. CBEI bought the equipment at a wholesale price and made a profit of the difference between the amount paid by petitioner to CBEI and the amount CBEI paid the supplier of the equipment. This fact is not at issue in this case.↩
4. All of the leases were on the same form, and the great majority of them were for 5 years with a stated monthly rental price for renewal for a period of 2 years. However, occasionally a lease would be for 3 years or 7 years and occasionally the renewal period would be stated in terms of so much a month for each of the following 3 years.↩
5. Sec. 7605(b) provides as follows: (b) Restrictions on Examination of Taxpayer.--No taxpayer shall be subjected to unnecessary examination or investigations, and only one inspection of a taxpayer's books of account shall be made for each taxable year unless the taxpayer requests otherwise or unless the Secretary or his delegate, after investigation, notifies the taxpayer in writing that an additional inspection is necessary.↩
6. The petition initially alleged that the years 1971 through 1974 were barred by the statute of limitations. In the allegations in their petition, petitioners stated that "they do not recall executing Form 872 within the last 12-month period." The stipulated facts show that Forms 872 were executed by petitioners, consenting to the extension of the statute of limitations to April 15, 1979. The deficiency notice for the years 1971 through 1974 was mailed to petitioners on December 26, 1978. At the trial and on brief, petitioners in effect conceded that except for their argument with respect to sec. 7605(b), the assessment or collection of deficiencies for the years 1971 through 1974 was not barred by the statute of limitations. All the information with respect to the extentions of the statute of limitations is contained in the stipulated facts which we have found to be as stipulated.↩
7. Sec. 46(e)(3) provides as follows: (e) Limitations with Respect to Certain Persons.-- (3) Noncorporate lessors.--A credit shall be allowed by section 38 to a person which is not a corporation with respect to property of which such person is the lessor only if-- (A) the property subject to the lease has been manufactured or produced by the lessor, or (B) the term of the lease (taking into account options to renew) is less than 50 percent of the useful life of the property, and for the period consisting of the first 12 months after the date on which the property is transferred to the lessee the sum of the deductions with respect to such property which are allowable to the lessor solely by reason of section 162 (other than rents and reimbursed amounts with respect to such property) exceeds 15 percent of the rental income produced by such property. In the case of property of which a partnership is the lessor, the credit otherwise allowable under section 38 with respect to such property to any partner which is a corporation shall be allowed notwithstanding the first sentence of this paragraph. For purposes of this paragraph, an electing small business corporation (as defined in section 1371) shall be treated as a person which is not a corporation.↩
8. See , for a situation somewhat comparable to that here involved.↩