ESTATE OF CAMERON W. BOMMER, DECEASED, MARCELLA BOMMER, EXECUTRIX, RONALD J. BOMMER, RESIDUARY TRUSTEE, TRUSTEE, AND EXECUTOR, CAMERON M. BOMMER, EXECUTOR, RONALD BOMMER, II, EXECUTOR, KELLY LONG, EXECUTRIX, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Estate of Bommer v. Commissioner
Docket No. 15485-94
United States Tax Court
T.C. Memo 1995-197; 1995 Tax Ct. Memo LEXIS 199; 69 T.C.M. (CCH) 2541; May 4, 1995, Filed *199 An order granting respondent's Motion for Partial Summary Judgment will be issued. For petitioner: Marc W. Rubin, Burgess L. Doan, and Janet L. Houston. For respondent: Joseph P. Grant. PANUTHOS
PANUTHOS
MEMORANDUM OPINION PANUTHOS, Chief Special Trial Judge: This matter is before the Court on respondent's Motion for Partial Summary Judgment. [1] Respondent seeks partial summary judgment that the terms of an Estate Tax Closing Letter issued to the Estate of Cameron W. Bommer (petitioner or the estate) do not affect the validity of the deficiency notice issued in this case. Summary judgment is intended to expedite litigation and avoid unnecessary and expensive trials. Florida Peach Corp. v. Commissioner, 90 T.C. 678, 681 (1988). Summary judgment may be granted with respect to all or any part of the legal issues in controversy *200 "if the pleadings, answers to interrogatories, depositions, admissions, and any other acceptable materials, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that a decision may be rendered as a matter of law." Rule 121(b); Sundstrand Corp. v. Commissioner, 98 T.C. 518, 520 (1992), affd. 17 F.3d 965 (7th Cir. 1994); Zaentz v. Commissioner, 90 T.C. 753, 754 (1988); Naftel v. Commissioner, 85 T.C. 527, 529 (1985). The moving party bears the burden of proving that there is no genuine issue of material fact, and factual inferences will be read in a manner most favorable to the party opposing summary judgment. Dahlstrom v. Commissioner, 85 T.C. 812, 821 (1985); Jacklin v. Commissioner, 79 T.C. 340, 344 (1982). The following is a summary of the relevant facts which do not appear to be in dispute; they are stated solely for purposes of deciding the motion and are not findings of fact for this case. Fed. R. Civ. P. 52(a); Sundstrand Corp. v. Commissioner, supra at 520.
*201 Background
Cameron W. Bommer (decedent) died on September 10, 1990. On September 19, 1990, Marcella Bommer, decedent's wife, was appointed executrix of decedent's estate. At the time of filing the petition herein, the executrix resided at Cincinnati, Ohio. At the time of his death, decedent owned 117.7568 shares of CamVic Corp. stock (CamVic stock). Decedent's CamVic stock was reported on the estate's Federal estate tax return, filed June 4, 1991, at an aggregate value of $ 1,334,573 or $ 11,330.30 per share. Decedent's estate was closed on August 23, 1991. On or about December 26, 1991, Revenue Agent Donald Grigsby notified counsel for petitioner of the beginning of an examination of the estate's Federal estate tax return. Revenue Agent Grigsby conducted the examination from December 26, 1991, through January 29, 1992. During the course of the examination, the estate complied with Revenue Agent Grigsby's request that certain assets be reallocated among various trusts identified as the beneficiaries of the residual portion of decedent's estate. The parties generally disagree with respect to the specific matters that were disclosed to Revenue Agent Grigsby during the *202 examination of the estate's return, and, specifically, whether the value of decedent's CamVic stock was discussed during the course of the examination. On January 29, 1992, Revenue Agent Grigsby issued an examination report for the estate. On March 12, 1992, the District Director of Internal Revenue, Cincinnati, Ohio, issued Letter 627(DO), entitled Estate Tax Closing Letter (closing letter), to the estate. The closing letter states: Our computation of the Federal tax liability for the above estate is shown below. It does not include any interest or late payment penalties that may be charged. Other penalties have been considered in the computation of net estate tax below. You should keep a copy of this letter as a permanent record because your attorney may need it to close the probate proceedings for the estate. This letter is evidence that the Federal tax return for the estate has either been accepted as filed, or has been accepted after an adjustment that you agree to. This is not a formal closing agreement under section 7121 of the Internal Revenue Code. We will not reopen this case, however, unless Revenue Procedure 85-13 [1985-1 C.B. 514], *203 reproduced on the back of this letter, applies. If you have any questions, please contact the person whose name and telephone number are shown above. Thank you for your cooperation.
The closing letter indicated that no tax was due from the estate. On October 7, 1993, the District Director advised counsel for petitioner that the examination of the estate's return was being reopened. By letter dated October 18, 1993, counsel for petitioner requested an explanation of the basis for the reopening. The District Director responded by letter dated January 13, 1994, stating that the failure to reopen the matter would result in a "Serious Administrative Omission." Respondent subsequently issued a deficiency notice to petitioner for Federal estate tax and generation-skipping transfer tax totaling $ 5,510,630. The deficiencies as determined by respondent are largely attributable to respondent's conclusion that petitioner understated the fair market value of decedent's CamVic stock on its Federal estate tax return. [2]
*204 Petitioner invoked this Court's jurisdiction by filing a timely petition for redetermination. The petition includes allegations that the deficiency notice is invalid on the grounds that respondent "erred in determining that she had authority and jurisdiction to reopen the closed examination" and acted "in an arbitrary and capricious manner in issuing the notice of deficiency." After filing an answer to the petition, respondent filed the Motion for Partial Summary Judgment pending before the Court. Petitioner in turn filed a Memorandum in Opposition to respondent's motion. The matter was called for hearing in Washington, D.C., on January 18, 1995. Counsel for both parties appeared at the hearing and presented argument on the motion. Discussion
Respondent's Motion for Partial Summary Judgment is directed at the allegations set forth in the petition contesting the validity of the deficiency notice. Contrary to petitioner's position, respondent argues that the closing letter dated March 12, 1992, was not effective to restrict respondent's authority to issue a deficiency notice in this case. More specifically, respondent maintains that partial summary judgment sustaining *205 the validity of the notice is warranted on the ground that, in the absence of a formal closing agreement as defined in section 7121, [3] she was not otherwise precluded from either reopening the examination in this case or issuing a deficiency notice to petitioner. In conjunction with the foregoing, respondent maintains that Rev. Proc. 85-13, 1985-1 C.B. 514, [4] *206 referred to in the closing letter, is directory rather than mandatory, and, therefore, the deficiency notice issued to petitioner is valid regardless of whether the criteria under the revenue procedure can be established. [5]
Although petitioner concedes that the closing letter in question is not a closing agreement within the meaning of section 7121, petitioner nonetheless maintains that respondent is obliged to demonstrate a sound basis for reopening the examination in this case. Petitioner opposes respondent's Motion for Partial Summary Judgment on the following grounds: Specifically, this Court should deny Commissioner's motion because: 1) there is long standing precedent in the Sixth Circuit which prohibits the Commissioner from reopening a closed case for the purpose of making an assessment based on a new view of old facts; 2) after *207 the Commissioner has limited her discretion by restricting the basis upon which she may reopen a closed examination, it is an abuse of discretion for her to then disregard those restrictions; and 3) the Commissioner, by incorporating her internal procedures into a written agreement with Petitioner, is contractually bound to abide by those procedures. It is only as to the third issue that this Court must determine the preemptive scope of sec. 7121 and decide whether the Commissioner has the authority to enter into agreements other than closing agreements so long as those agreements do not have the effect of a final determination of the taxpayer's tax liability.
We will address each of petitioner's contentions in turn. 1. Authority to Reopen an Examination
Petitioner relies on Woodworth v. Kales, 26 F.2d 178 (6th Cir. 1928), as well as H.S.D. Co. v. Kavanagh, 191 F.2d 831 (6th Cir. 1951), and Boyne City Lumber Co. v. Doyle, 47 F.2d 772 (W.D. Mich. 1930), for the proposition that respondent may not reopen an examination based simply on a new view of facts that were available to *208 respondent at the time the examination was initially closed. [6] Applying this principle to the case at hand, petitioner asserts that respondent's motion must be denied due to the parties' factual dispute regarding the specific matters that were disclosed or available to Revenue Agent Grigsby during the course of the original examination. We disagree.
In Woodworth v. Kales, supra, the taxpayer, intending to sell certain Ford Motor Co. stock, applied to the Commissioner to determine the fair market value of the stock as of March 1, 1913. Such information was necessary to allow the taxpayer to compute her gain on the sale of the shares. [7] Relying on the Commissioner's determination that the stock was worth approximately $ 9,500 per share as of March 1, 1913, the taxpayer sold her stock and reported a profit of approximately $ 3,000 per share on her *209 income tax return for 1919.
The taxpayer's 1919 tax return subsequently came under examination four times during the period 1920 through 1922. In each instance, the Commissioner approved the taxpayer's treatment of the sale of the Ford Motor Co. stock. In 1925, however, the Commissioner reconsidered the fair market value of the stock as of March 1, 1913, concluded that the stock was worth less than he had previously opined, and determined a deficiency in the taxpayer's income tax for 1919 based on the lower value. The taxpayer paid the deficiency and sued the Commissioner for a refund. In prosecuting her claim for a refund, the taxpayer took issue with the Commissioner's authority to reopen the examination in the manner described. *210 While conceding that the deficiency determination was based on a new view of the same facts underlying her original valuation of the stock, the Commissioner argued that she was free to reexamine the matter in the absence of a formal closing agreement. Woodworth v. Kales, supra at 181-182. The trial court rejected this argument and directed a verdict in favor of the taxpayer. The Commissioner fared no better on appeal of the matter to the Court of Appeals for the Sixth Circuit. Specifically, while recognizing that the Commissioner may reopen an examination where there is evidence of fraud, mistake, or new evidence, id. at 181, the court held that the Commissioner was precluded from reopening the examination where the record showed that the Commissioner's actions were based simply on a new or matured view of the same facts relied upon in closing the original examination. Id. at 183. The holding in Woodworth v. Kales, supra, stands in contrast to the decision rendered in McIlhenny v. Commissioner, 13 B.T.A. 288 (1928), *211 affd. 39 F.2d 356 (3d Cir. 1930). In the latter case, the taxpayer's Federal income tax return for 1920 came under examination by a revenue agent who proposed to disallow a deduction reported on the return. The taxpayer responded by filing a protest with the Commissioner. After reviewing both the revenue agent's report and the taxpayer's protest, the Commissioner expressly allowed the deduction in full. Nearly 2 years later, however, the Commissioner (without new evidence or any indication of fraud, malfeasance, or misrepresentation of fact) reopened the matter, disallowed the deduction, and determined a deficiency in the taxpayer's income tax for 1920. The Commissioner's determination disallowing the deduction was sustained both by our predecessor, the Board of Tax Appeals, and, on appeal, by the Court of Appeals for the Third Circuit. In so ruling, the Court of Appeals for the Third Circuit declined to follow Woodworth v. Kales, supra, and rejected the taxpayer's argument that the Commissioner lacked the authority to revisit the question of the propriety of the deduction. The court reasoned as follows: In the *212 case at bar, the statutory procedure [pertaining to closing agreements] was not followed, in that there was no agreement in writing, or otherwise, that the determination and assessment of February, 1924, should be final and conclusive. As a consequence, we are constrained to hold that the determination and assessment of 1924 were not final and conclusive, and that the Commissioner was not estopped or otherwise barred, by the payment and acceptance of the tax based on such determination and assessment, from reopening the case and making the further determination subsequently made by him. It is true that this conclusion is in conflict with the Commissioner's general order of January 20, 1923, which reads thus: "Numerous complaints from various sources have reached me that taxpayers are being subjected to examinations and requests for information concerning cases in which the audits have been completed and the cases closed. Such examinations are not advisable and are clearly contrary to the spirit of the act and the regulations of the Department. The reopening of closed cases should be the rare exception and not the rule. In the absence of evidence of fraud or gross error cases *213 once closed are not to be reopened." Such an order cannot, however, change the controlling legislative will as disclosed by the statutes hereinbefore considered. Yet, its recitals and breach by those in authority may serve with the facts and conclusion of this case and other like cases to aid the Congress in determining whether additional legislation is or is not needed to protect citizens from the molestations and want of repose that concededly exist in practice under the present statutes.
McIlhenny v. Commissioner, 39 F.2d at 358. Shortly after deciding McIlhenny v. Commissioner, supra, the Court of Appeals for the Third Circuit cited the case in support of its holding that the Commissioner had the authority to reopen an examination, disallow a deduction, and determine a deficiency, despite the fact that the Commissioner had previously approved the taxpayer's claimed deduction with respect to the same item resulting in the allowance of a claim for refund. Porter v. Commissioner, 39 F.2d 360, 361 (3d Cir. 1930), affg. on this point 13 B.T.A. 279, 285-286 (1928). Significantly, *214 the Supreme Court cited McIlhenny v. Commissioner, supra, with approval in affirming the Court of Appeals for the Third Circuit decision on this particular point. Burnet v. Porter, 283 U.S. 230, 231 (1931), affg. in part and revg. in part Porter v. Commissioner, 39 F.2d 360 (3d Cir. 1930). In light of the Supreme Court's decision in Burnet v. Porter, supra, adopting the reasoning of McIlhenny v. Commissioner, supra, we hold that the former decision is controlling with respect to the question of respondent's authority to reopen an examination. In short, where the parties have not executed a formal closing agreement, respondent generally may reopen a case and determine a deficiency in tax notwithstanding the issuance of an estate tax closing letter earlier in the proceedings. [8]
*215 2. Abuse of Discretion
Petitioner argues in the alternative that respondent's Motion for Partial Summary Judgment should be denied on the ground that respondent abused her discretion in this case by failing to honor the representations set forth in the closing letter regarding the reopening of the case. Petitioner cites cases such as Capitol Fed. Sav. & Loan Association v. Commissioner, 96 T.C. 204 (1991); Elkins v. Commissioner, 81 T.C. 669 (1983); and Lansons, Inc. v. Commissioner, 69 T.C. 773 (1978), affd. 622 F.2d 774 (5th Cir. 1980), for the proposition that respondent's failure to comply with such self-imposed restrictions constitutes an abuse of discretion. As a preliminary matter, we note that after notifying counsel for petitioner of the reopening of the examination, and in response to counsel's subsequent inquiry regarding the grounds for such action, the District Director advised that such action was necessary to avoid a "Serious Administrative Omission". The ground cited by the District Director is listed in Rev. Proc. 85-13, 1985-1 C.B. 514, *216 as an acceptable reason for reopening a case. Thus, considering the literal terms of the closing letter, we cannot say that petitioner was entitled to anything more or that respondent abused her discretion. In any event, we decline petitioner's invitation to scrutinize the scope and details of the original examination in this case for the purpose of declaring the deficiency notice invalid. Indeed, were we to proceed along that path, we would run headlong into the time-honored rule against "looking behind" the notice of deficiency. Simply stated, absent substantial evidence of a violation of the taxpayer's constitutional rights, we generally will not examine respondent's conduct in arriving at her determination or determine a deficiency notice to be invalid on such basis. See Riland v. Commissioner, 79 T.C. 185, 200-202 (1982); Greenberg's Express, Inc. v. Commissioner, 62 T.C. 324, 327-328 (1974); see also Frazier v. Commissioner, 91 T.C. 1, 9 (1988). Petitioner has not submitted evidence suggesting unconstitutional conduct on the part of respondent. Moreover, this case is not one in *217 which review of respondent's actions preceding the issuance of the deficiency notice is necessary to determine the merits of respondent's substantive determination of a deficiency. See Capitol Fed. Sav. & Loan Association v. Commissioner, supra at 214-215, and cases cited therein. In sum, we are unable to find that respondent abused her discretion in this case. 3. Effect of the Closing Letter
Petitioner also contends that, prior to reopening the examination of the estate's return, respondent was contractually bound to comply with Rev. Proc. 85-13, 1985-1 C.B. 514, by virtue of her express adoption of the procedure in the closing letter. Again, we disagree. We do not share petitioner's view that the closing letter in question is properly characterized as a contract. As explained in Estate of Meyer v. Commissioner, 58 T.C. 69, 70-71 (1972): Section 7121 of the Internal Revenue Code of 1954 sets forth the exclusive procedure under which a final closing agreement as to the tax liability of any person can be executed. Botany Worsted Mills v. United States, 278 U.S. 282 (1929); *218 Brubaker v. United States, 342 F.2d 655 (C.A. 7, 1965); Bennett v. United States, 231 F.2d 465 (C.A. 7, 1956); George H. Baker, 24 T.C. 1021, 1024 (1955); and Earl C. Parks, 33 T.C. 298, 302 (1959), acq. 1960-1 C.B. 5. That section envisages an agreement knowingly entered into by both parties. H.M. Harrington, Jr., 48 T.C. 939, 953 (1967), affirmed on another issue 404 F.2d 237 (C.A. 5, 1968). [Fn. ref. omitted.]
The closing letter that respondent issued to the estate in this case unambiguously states that the letter does not constitute a closing agreement under section 7121. Given this language, we are not inclined to treat the letter as a contractual agreement. In conjunction with the foregoing, we observe that it has long been held that Rev. Proc. 85-13, supra, is directory, not mandatory, and that the Commissioner's failure to follow the procedure does not affect the Commissioner's authority to issue a deficiency notice. *219 See Estate of Meyer v. Commissioner, supra at 70-71; Schwager v. Commissioner, 64 T.C. 781, 787 (1975); Estate of Keeler v. Commissioner, T.C. Memo. 1984-632; see also Cleveland Trust Co. v. United States, 421 F.2d 475 (6th Cir. 1970) (holding that Rev. Proc. 60-24, 1960-2 C.B. 998, which describes the procedure for the rejection of an informal conference agreement, is merely directory and the Commissioner's failure to identify the "clearly defined error" required under the procedure did not prevent the Commissioner from rejecting such an agreement or determining a deficiency). But cf. Law v. United States, 83-1 USTC par. 13,514 (N.D. Cal. 1982). Consistent with Estate of Meyer v. Commissioner, supra, we do not view the revenue procedure as binding on respondent under the circumstances presented.[9]
*220 To reflect the foregoing, An order granting respondent's Motion for Partial Summary Judgment will be issued. Footnotes
1. Unless otherwise indicated, section references are to the Internal Revenue Code, as amended. Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. Respondent determined that the fair market value of decedent's CamVic Corp. stock was $ 75,278.22 per share on the date of decedent's death. In making this determination, it appears that respondent rejected petitioner's position that the fair market value of decedent's CamVic stock was limited by a restrictive shareholder's agreement adopted by CamVic's shareholders on Jan. 2, 1975.↩
3. Sec. 7121, entitled "Closing Agreements", provides in pertinent part: SEC. 7121(a)↩. Authorization. -- The Secretary is authorized to enter into an agreement in writing with any person relating to the liability of such person (or of the person or estate for whom he acts) in respect of any internal revenue tax for any taxable period.
4. Rev. Proc. 85-13, 1985-1 C.B. 514, states in pertinent part: SEC. 4. POLICY .01 The Internal Revenue Service will not reopen any case closed after examination by a district office or service center to make an adjustment unfavorable to the taxpayer unless: 1. There is evidence of fraud, malfeasance, collusion, concealment or misrepresentation of a material fact; or 2. The prior closing involved a clearly defined substantial error based on an established Service position existing at the time of the previous examination; or 3. Other circumstances exist that indicate failure to reopen would be a serious administrative omission.
Rev. Proc. 85-13, supra, was recently superseded by Rev. Proc. 94-68, 1994-44 I.R.B. 16↩.
5. Respondent candidly admits that she filed the instant Motion for Partial Summary Judgment in order to avoid the effort and expense that will otherwise be necessary if she is required to show that the criteria under Rev. Proc. 85-13, 1985-1 C.B. 514↩, were satisfied prior to the issuance of the deficiency notice. Respondent asserts that, if necessary, she can establish that the criteria under the revenue procedure were satisfied.
6. Based on the record presented, it appears that an appeal of this matter will lie with the Court of Appeals for the Sixth Circuit.↩
7. It appears that the taxpayer applied to the Commissioner for a determination of the fair market value of the stock due to the fact that there was no public market for the stock as of Mar. 1, 1913. Woodworth v. Kales, 26 F.2d 178, 178-179↩ (6th Cir. 1928).
8. We observe that the lack of finality of a closing letter provides advantages to the Commissioner and taxpayers alike. In particular, a closing letter would not preclude a taxpayer from filing a claim for a refund if, upon further reflection, the taxpayer resolved that the tax in question had been overpaid. See, e.g., Trust Servs. of America, Inc. v. United States, 885 F.2d 561↩ (9th Cir. 1989), and cases cited therein.
9. It is worth noting that the closing letters issued by the Commissioner in Estate of Meyer v. Commissioner, 58 T.C. 69 (1972), and Schwager v. Commissioner, 64 T.C. 781↩ (1975), do not contain the language at the center of the dispute in this case. It appears that respondent added the disputed language to the form closing letter sometime in the mid-1970's. It is our understanding that such closing letters are normally issued in estate cases to provide a measure of assurance that the estate's Federal tax liabilities have been satisfied and, thus, to permit the closing of the probate estate at the local level. While we agree with petitioner that the reference to the revenue procedure may be misleading, and question whether such language is necessary in order for the closing letter to serve its purpose, there is no sound basis, either in law or fact, that would permit this Court to compel respondent to adhere to those procedures under the circumstances presented.