T.C. Memo. 2011-159

UNITED STATES TAX COURT

RICHARD KAY, JR., Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 18203-09.                    Filed July 6, 2011.

Richard Kay, Jr., pro se.

<u>Mindy S. Meigs</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

COHEN, <u>Judge</u>:  Respondent determined deficiencies and penalties as follows:

|  |  | Penalty |
| Year | Deficiency | Sec. 6662(a) |
| 2001 | $131,693 | $26,338.60 |
| 2002 | 90,020 | 18,004.00 |

The issues for decision are: (1) Whether petitioner was a trader in securities during 2000, 2001, and 2002; (2) whether petitioner is entitled to claim a net operating loss (NOL) carryover from 2000 in 2001 and 2002; (3) whether petitioner must include a State income tax refund in his taxable income in 2002; and (4) whether petitioner is liable for the penalties under section 6662. Unless otherwise indicated, all section references are to the Internal Revenue Code (Code) in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

FINDINGS OF FACT

Some of the facts have been stipulated, and the stipulated facts are incorporated in our findings by this reference. At the time the petition was filed, petitioner resided in California.

Petitioner holds a degree in economics from San Diego State University. During the years in issue, petitioner operated a ball bearing manufacturing and distribution business, Clean Wave Management, Inc. (Clean Wave), an S corporation. Petitioner has been Clean Wave's sole shareholder, officer, and director from the date of its incorporation in 1995 to the present. During the relevant period, petitioner resided in one unit of a duplex, with Clean Wave operating out of the other unit. Clean Wave had three additional employees who worked with petitioner throughout the years in issue.

On his 2000-2002 Forms 1040, U.S. Individual Income Tax Return, as amended, petitioner reported wages paid by Clean Wave of $36,400, $43,600, and $52,000 respectively.  On Clean Wave's 2000-2002 Forms 1120S, U.S. Income Tax Return for an S Corporation, as amended, the corporation reported net income of $657,683, $385,270, and $278,213.

Petitioner traded securities prior to and throughout 1999-2002.  Petitioner made a mark-to-market election under section 475(f) in 1999 and did not revoke that election through 2002.

The number of days petitioner traded securities and the number of transactions he engaged in from 2000-2002 was as follows:

| | 2000 Trading Activity | | 2001 Trading Activity | | 2002 Trading Activity | |
|---|---|---|---|---|---|---|
| | Trading Days | No. of Trans. | Trading Days | No. of Trans. | Trading Days | No. of Trans. |
| Jan. | 4 | 11 | 0 | 0 | 1 | 4 |
| Feb. | 9 | 50 | 1 | 2 | 2 | 8 |
| Mar. | 7 | 17 | 0 | 0 | 5 | 14 |
| Apr. | 8 | 62 | 0 | 0 | 2 | 14 |
| May | 3 | 15 | 0 | 0 | 2 | 7 |
| June[1] | 1 | 4 | 0 | 0 | 3 | 5 |
| July | 7 | 38 | 1 | 1 | 6 | 32 |
| Aug. | 6 | 24 | 0 | 0 | 0 | 0 |
| Sept. | 3 | 14 | 2 | 16 | 0 | 0 |
| Oct. | 6 | 13 | 6 | 28 | 0 | 0 |
| Nov. | 11 | 32 | 3 | 5 | 0 | 0 |
| Dec. | 8 | 33 | 5 | 20 | 0 | 0 |
| Total | 73 | 313 | 18 | 72 | 21 | 84 |

[1]The record does not include complete information for June 2000.  The totals include the data that is available in the record.  On the basis of what the record does provide, the missing data would not have significantly changed the number of days petitioner traded securities or the number of transactions he completed.

There were 252 total trading days in 2000 and 2002, and 248 trading days in 2001.

In 2000, the total value of the securities petitioner purchased was over $20 million, and the total value of the securities petitioner sold was also over $20 million. Petitioner bought and sold the same stock on the same day on only six occasions in 2000. In 2001, the total value of the securities purchased and sold was $2,349,320.35 and $1,576,548.02 respectively. He bought and sold the same stock on the same day on only four occasions in 2001. In 2002, the total value of the securities purchased and sold was $1,234,427.90 and $1,852,167.29 respectively. He bought and sold the same stock on the same day on only three occasions in 2002.

Petitioner attached a Schedule C, Profit or Loss From Business, to his 2000 Form 1040 where he reported his income, losses, and expenses from his sales of securities. On that form he listed his principal business or profession as "DAY TRADE". On his 2000 Schedule C, petitioner reported a net loss of $2,052,637, arising from $1,960,060 in losses from sales of stocks and $92,577 in expenses. Petitioner offset other ordinary taxable income by deducting some of these losses.

On his amended 2001 Schedule C, petitioner reported a net loss of $399,740, arising from $399,162 in losses from the sale

of stocks and $578 in expenses. He also reported an NOL of $1,396,943 carried over from 2000.

On his 2002 Schedule C, petitioner reported a net loss of $278,297, arising from $262,921 in losses from the sale of stocks and $15,376 in expenses. On his 2002 return, he also reported the same $1,396,943 NOL carried over from 2000, some of which he used to offset other ordinary income.

Petitioner claimed a deduction of $21,806 for State and local income taxes on his 2001 return. At the time he filed his return he reported a negative income and thus did not receive a tax benefit from the deduction. However, in the notice of deficiency, the IRS disallowed the ordinary losses for 2001 as described above. Consequently, the notice of deficiency included an additional $16,059 of income in 2002 after the IRS became aware that during 2002 petitioner had received a refund of that amount from his State taxes.

OPINION

Trading Activities

Respondent disallowed deductions for ordinary losses beyond the limit of $3,000 under section 1211(b) for losses arising from petitioner's trading of securities during 2001 and 2002. See sec. 165(f). Respondent also disallowed deductions for an NOL carried over from 2000 to the years in issue arising from similar trading activity. We may determine the correct amount of taxable

income or NOL for a year not in issue (whether or not the assessment of a deficiency for that year is barred) as a preliminary step in determining the correct amount of an NOL carryover to a taxable year in issue.  Lone Manor Farms, Inc. v. Commissioner, 61 T.C. 436, 440 (1974), affd. without published opinion 510 F.2d 970 (3d Cir. 1975).

In general, for Federal tax purposes, a person who purchases and sells securities falls into one of three distinct categories: dealer, trader, or investor.  See King v. Commissioner, 89 T.C. 445, 458-459 (1987).  The parties have not argued that petitioner was a dealer for the years in issue.

Section 475(f) provides generally that a taxpayer engaged in business as a securities trader may elect to use the mark-to-market method of accounting for securities held in a business.  Under the mark-to-market method of accounting a taxpayer generally recognizes at the end of the year ordinary gain or loss on all securities held in the business as if the securities were sold at the end of the year for fair market value.  Sec. 475(d)(3), (f)(1)(A)(i); Lehrer v. Commissioner, T.C. Memo. 2005-167, affd. 279 Fed. Appx. 549 (9th Cir. 2008). Ordinary losses are thereby made available to offset ordinary income and are not subject to the $3,000 limitation, as relevant here, imposed by section 1211(b) on the deduction of capital losses in excess of capital gains.  See Vines v. Commissioner,

126 T.C. 279, 288 (2006). Petitioner made a timely mark-to-market election pursuant to section 475(f). However, section 475(f) applies only to those engaged in a trade or business as traders in securities.

Traders are engaged in the trade or business of selling securities for their own account. See King v. Commissioner, supra at 457-458. Investors likewise buy and sell for their own account, but they are not considered to be in the trade or business of selling securities. See Arberg v. Commissioner, T.C. Memo. 2007-244. Unlike an investor, a trader's expenses are deducted in determining adjusted gross income rather than as itemized expenses. Whether petitioner's activities constituted a trade or business is a question of fact. See Higgins v. Commissioner, 312 U.S. 212, 217 (1941); Cameron v. Commissioner, T.C. Memo. 2007-260.

In determining whether a taxpayer is a trader, nonexclusive factors to consider are: (1) The taxpayer's intent, (2) the nature of the income to be derived from the activity, and (3) the frequency, extent, and regularity of the taxpayer's securities transactions. Purvis v. Commissioner, 530 F.2d 1332, 1334 (9th Cir. 1976), affg. T.C. Memo. 1974-164. For a taxpayer to be a trader, the trading activity must be substantial, which means "'frequent, regular, and continuous enough to constitute a trade or business'". Ball v. Commissioner, T.C. Memo. 2000-245

(quoting <u>Hart v. Commissioner</u>, T.C. Memo. 1997-11). A taxpayer's activities constitute a trade or business where both of the following requirements are met: (1) The taxpayer's trading is substantial, and (2) the taxpayer seeks to catch the swings in the daily market movements and to profit from these short-term changes rather than to profit from the long-term holding of investments. <u>King v. Commissioner</u>, <u>supra</u> at 458-459; <u>Mayer v. Commissioner</u>, T.C. Memo. 1994-209.

With respect to the first requirement, when evaluating whether a taxpayer's trading activities were substantial we have considered the number of executed trades in a year and the amount of money involved in those trades. When the number of trades made and the amount of money involved in those trades is small in a given year, a taxpayer's trading activity is insubstantial. See <u>Moller v. United States</u>, 721 F.2d 810, 813-814 (Fed. Cir. 1983) (finding 124 trades in one year and 106 trades in the following year was insubstantial); <u>Holsinger v. Commissioner</u>, T.C. Memo. 2008-191 (finding 289 trades with aggregate sales of $754,277 in one year at issue was insubstantial). When the number of trades and the amount of money involved in those trades is large, a taxpayer's trading activity is substantial. See <u>Mayer v. Commissioner</u>, <u>supra</u> (1,100 sales and purchases with gross receipts of more than $10 million in each year at issue was substantial); <u>Paoli v. Commissioner</u>, T.C. Memo. 1991-351 (326

sales of stocks with gross receipts of more than $9 million in the year at issue was substantial).

We have also considered the amount of time petitioner spent buying and selling securities. A taxpayer's trading activity is insubstantial when the taxpayer trades only for a small portion of the trading days in the particular year. See Holsinger v. Commissioner, supra (finding "it doubtful whether the trades were conducted with the frequency, continuity, and regularity indicative of a business" when trades occurred on approximately 40- to 45-percent of the trading days in the years at issue). In addition, a taxpayer engaged in sufficiently substantial trading activity to qualify as a trade or business will generally rely on that activity as their sole or primary source of income. See Chen v. Commissioner, T.C. Memo. 2004-132.

With respect to the second requirement for classification as a trader, a taxpayer must have sought to profit from short-term swings in the stock market. See Mayer v. Commissioner, supra. Thus, investors generally hold securities for relatively long periods of time while traders hold securities for short periods. See Holsinger v. Commissioner, supra (holding that taxpayers did not demonstrate that they sought to profit from short-term swings in the market because they rarely bought and sold the same stock on the same day and held a significant amount for more

than 31 days); see also Estate of Yaeger, T.C. Memo. 1988-264, affd. 889 F.2d 29 (2d Cir. 1989).

The number of trades petitioner engaged in during the years 2000, 2001, and 2002 was not substantial. In 2000, 2001, and 2002, petitioner executed 313 trades, 172 trades, and 84 trades respectively. We found similar numbers of trades to be insubstantial in the cases discussed above. In 2000, however, the total amount of money involved in trading was substantial. In that year, petitioner made over $20 million in purchases and a similar amount in sales. In 2001 and 2002, petitioner's gross purchases and gross sales, which ranged between $1 million and $2.5 million, were less substantial. In any case, managing a large amount of money is not conclusive as to whether petitioner's trading activity amounted to a trade or business. See Moller v. United States, supra at 814.

Petitioner's trading activity was infrequent. In the years 2000, 2001, and 2002, petitioner conducted trading activity on just 29 percent, 7 percent, and 8 percent of the possible trading days in each year, respectively. Income from Clean Wave was his primary source of income. Despite petitioner's assertion that he spent the majority of his time as a day trader, the number of days he actually made trades show otherwise.

Petitioner generally did not hold stocks for intervals that demonstrate an intention to profit from day trading. The

majority of the stocks he purchased and sold in each of the years at issue were held for over 30 days. Petitioner rarely purchased and sold the same stock on the same day.

Overall, petitioner has not met the requirements for his trading activity to be treated as a trade or a business. Thus he is limited to a $3,000 deduction of losses arising from the purchase and sale of securities in 2001 and 2002 under section 1211(b) and may not carry forward the NOL generated in 2000.

State Income Tax Refund

Petitioner bears the burden of proving that the determination of unreported income in the notice of deficiency is erroneous. See Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).

Generally, under section 111 and the regulations thereunder, if a tax was deducted on a prior year's return that resulted in a reduction of tax and a tax benefit to the taxpayer, the taxpayer's subsequent recovery of the tax must be included in gross income in the year the recovery is received. Prewitt v. Commissioner, T.C. Memo. 1995-24; Kadunc v. Commissioner, T.C. Memo. 1992-61, affd. without published opinion 981 F.2d 1251 (4th Cir. 1992).

Petitioner reported a deduction for State income taxes of $21,806 on his 2001 tax return. Because we here determine that his income in 2001 was not offset by the securities trading

losses, he will receive a tax benefit from that deduction. Petitioner did not address this issue in the petition or at trial and did not submit any briefs. Accordingly, as respondent determined in the notice of deficiency, the refund of State income tax received in 2002 is includable in gross income for that year.

Accuracy-Related Penalty

Section 6662(a) and (b)(1) and (2) imposes a 20-percent accuracy-related penalty on any underpayment of Federal income tax attributable to a taxpayer's negligence or disregard of rules or regulations or substantial understatement of income tax. Section 6662(c) defines negligence as including any failure to make a reasonable attempt to comply with the provisions of the Code and defines disregard as any careless, reckless, or intentional disregard. Disregard of rules or regulations is careless if the taxpayer does not exercise reasonable diligence to determine the correctness of a return position that is contrary to the rule or regulation. Sec. 1.6662-3(b)(2), Income Tax Regs. A substantial understatement of income tax exists if the understatement exceeds the greater of 10 percent of the tax required to be shown on the return or $5,000. Sec. 6662(d)(1)(A).

Under section 7491(c), the Commissioner bears the burden of production with regard to penalties and must come forward with

sufficient evidence indicating that it is appropriate to impose penalties. See Higbee v. Commissioner, 116 T.C. 438, 446 (2001). However, once the Commissioner has met the burden of production, the burden of proof remains with the taxpayer, including the burden of proving that the penalties are inappropriate because of reasonable cause or substantial authority. See Rule 142(a); Higbee v. Commissioner, supra at 446-447. Considering the erroneous nature of the deductions and the amounts of the resulting underpayment of tax, respondent has satisfied the burden of producing evidence that the penalty is appropriate for 2001 and 2002.

The accuracy-related penalty under section 6662(a) is not imposed with respect to any portion of the underpayment as to which the taxpayer acted with reasonable cause and in good faith. Sec. 6664(c)(1); Higbee v. Commissioner, supra at 448. The decision as to whether a taxpayer acted with reasonable cause and in good faith is made on a case-by-case basis, taking into account all of the pertinent facts and circumstances. See sec. 1.6664-4(b)(1), Income Tax Regs.

Petitioner does not separately address the penalty issue. He failed to allege that the Commissioner's imposition of a penalty was erroneous in his petition, and the issue is therefore deemed conceded. See Rule 34(b)(4); Swain v. Commissioner, 118 T.C. 358, 363-365 (2002). In any event, petitioner has not

demonstrated reasonable cause. Petitioner is a sophisticated investor, but his references to his accountant at trial were insufficient to prove that he relied on professional advice or otherwise sought to determine the appropriate tax treatment of his transactions. Petitioner is liable for the penalty for 2001 and 2002.

We have considered the other arguments of the parties, and they either are without merit or need not be addressed in view of our resolution of the issues. For the reasons explained above,

<u>Decision will be entered for</u>

<u>respondent</u>.