149 T.C. No. 11

UNITED STATES TAX COURT

ESTATE OF MINNIE LYNN SOWER, DECEASED, FRANK W. SOWER, JR.
AND JOHN R. SOWER, CO-EXECUTORS, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 32361-15.                           Filed September 11, 2017.

H died in 2012, and H's estate reported a deceased spousal unused exclusion (DSUE) and elected portability of the DSUE. In 2013 R sent H's estate a letter reporting that the return had been accepted as filed. W died in 2013. W's estate claimed the DSUE reported by H's estate. As a part of an examination of the estate tax return filed by W's estate, R also examined the estate tax return filed by H's estate. R reduced the amount of the DSUE by the amount of taxable gifts given by H but did not determine or assess a deficiency against H's estate. But R determined an estate tax deficiency against W's estate. W's estate filed a petition in which it made several arguments regarding why R should not be allowed to examine the estate tax return filed by H's estate to determine the proper DSUE amount allowable to W's estate.

Held: R acted within the authority granted by I.R.C. sec. 2010(c)(5)(B) when he examined the estate tax return of a predeceased spouse to determine the correct DSUE amount.

Held, further, a letter stating that the estate tax return of a predeceased spouse has been accepted as filed is not a closing agreement under I.R.C. sec. 7121.

Held, further, a letter stating that the estate tax return of a predeceased spouse has been accepted as filed does not estop R from examining the return of the predeceased spouse.

Held, further, an examination of the estate tax return of a predeceased spouse in which R reviews the records in his possession and asserts no additional tax is not a second examination within the meaning of I.R.C. sec. 7605(b).

Held, further, the estate of a later deceased spouse cannot challenge whether an examination of the estate tax return of a predeceased spouse is an improper second examination within the meaning of I.R.C. sec. 7605(b) because only the examined party can seek protection from a second examination under I.R.C. sec. 7605(b).

Held, further, the applicable regulations relating to I.R.C. sec. 2010 do not prohibit R from examining the predeceased spouse's return.

Held, further, the effective date of I.R.C. sec. 2010(c)(5)(B) does not preclude R from adjusting the DSUE amount by gifts given before Dec. 31, 2010, when the DSUE amount affects an estate tax return for a decedent dying after Dec. 31, 2010.

Held, further, R's application of I.R.C. sec. 2010(c)(5)(B) did not frustrate congressional intent with respect to portability.

Held, further, the period of limitations on assessment of tax for the estate of the predeceased spouse is not implicated if R does not determine an estate tax deficiency for the estate of the predeceased spouse.

Phyllis A. Sower, for petitioner.

John S. Hitt and Denise A. Diloreto, for respondent.

OPINION

BUCH, Judge:  This is an estate tax deficiency case involving the Estate of

Minnie Lynn Sower.  Minnie was the surviving spouse of her late husband Frank

W. Sower.[1]  When Frank's estate filed its estate tax return, the estate did not use

all of the basic exclusion amount allowed under section 2010(c)(3).[2]  The

Commissioner sent a letter to Frank's estate informing it that its return had been

accepted as filed.  After Minnie passed away, her estate sought to use the deceased

spousal unused exclusion (DSUE) as allowed by section 2010(c)(2)(B).  As part of

examining the return for Minnie's estate, the Commissioner reviewed Frank's

estate's tax return and reduced the amount of the DSUE.  Minnie's estate raises

various arguments as to why the Commissioner should be prohibited from

---

[1]For convenience and clarity, we will refer to the Sowers by their given names.

[2]Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the date of decedent's death, and all Rule references are to the Tax Court Rules of Practice and Procedure.  All monetary amounts are rounded to the nearest dollar.

considering the estate tax return of the predeceased spouse for the limited purpose of adjusting the amount of the DSUE allowable to the estate of the surviving spouse. In determining the correct amount of the DSUE allowable to the estate of a surviving spouse, the Commissioner may consider the estate tax return of a predeceased spouse. The period of limitations on assessment for the estate of the predeceased spouse is not implicated because no tax is being assessed against the estate of the predeceased spouse. And a letter informing an estate that its return has been accepted as filed is not a closing agreement and does not otherwise preclude the Commissioner from considering the amount of the DSUE left from that estate to a surviving spouse's estate.

## Background

This case was submitted under Rule 122.

At the time of Frank's death, Frank and Minnie were married. During their lifetimes, Frank and Minnie gave $997,920 and $997,921 in taxable gifts, respectively. All of the gifts were given between 2003 and 2005. The Sowers filed a Form 709, United States Gift (and Generation-Skipping Transfer) Tax Return, for each year in which they gave taxable gifts.

Frank died on February 23, 2012. His estate filed a timely return reporting that it had no estate tax liability. The estate also reported zero in taxable gifts but

included $945,420 in taxable gifts on the worksheet provided to calculate taxable

gifts to be reported on the return. Frank's estate reported a DSUE of $1,256,033

and elected portability of the DSUE to allow the surviving spouse to use it.[3]

On November 1, 2013, the Commissioner issued an initial Letter 627, Estate

Tax Closing Document, to Frank's estate. The Letter 627 showed no estate tax

liability for Frank's estate. The Letter 627 also stated that the return had been

accepted as filed and further stated:

> [The Commissioner] will not reopen or examine this return unless
> * * * [notified] of changes to the return or there is: (1) evidence of
> fraud, malfeasance, collusion, concealment or misrepresentation of a
> material fact; (2) a clearly defined substantial error based upon
> established Internal Revenue Service position; or (3) a serious
> administrative error.

Minnie died on August 7, 2013. Her estate filed a timely return claiming a

DSUE of $1,256,033 from Frank's estate. Initially, her estate reported and paid an

overall estate tax liability of $369,036. Three months later the estate paid an

additional $386,424 in tax and interest to correct a mathematical error on the

original return. Like Frank's estate, Minnie's estate did not include the lifetime

---

[3]Per the Form 706, United States Estate (and Generation-Skipping Transfer) Tax Return, "A decedent with a surviving spouse elects portability of the deceased spousal unused exclusion (DSUE) amount, if any, by completing and timely-filing this return." An affirmative election is not required.

taxable gifts on the return, though rather than reporting zero in gifts as on Frank's estate tax return, it left the entry blank on Minnie's estate's tax return.

In February 2015 the Commissioner began an examination of the return filed by Minnie's estate. In connection with that examination, the Commissioner also opened an examination of the return filed by Frank's estate to determine the proper DSUE amount available to Minnie's estate. On March 25, 2015, an attorney assigned to examine the return filed by Frank's estate sent the executors a letter and a draft revised report showing an adjustment to the amount of Frank's lifetime taxable gifts. On July 20, 2015, the Commissioner issued a second Estate Tax Closing Document to Frank's estate. The body of the second letter is identical to that of the first Estate Tax Closing Document. Nothing in the record suggests that the Commissioner requested any additional information from or determined any additional liability for Frank's estate.

As a result of the examination of the return filed by Frank's estate, the Commissioner reduced the DSUE available to Minnie's estate from $1,256,033 to $282,690. The Commissioner also adjusted Minnie's taxable estate by the amount of her lifetime taxable gifts. Finally, the Commissioner reduced Minnie's taxable estate by $850 to account for funeral costs. Together these adjustments increased the estate tax liability for Minnie's estate by $788,165. On December 2, 2015, the

Commissioner sent Minnie's estate a notice of deficiency determining a $788,165 estate tax deficiency.

Minnie's estate filed a timely petition for redetermination of that deficiency. The estate disputes the full $788,165 in additional estate tax. At the time of Minnie's death she was a resident of Kentucky, and at the time of the petition the executors were residents of Kentucky.

## Discussion

In its briefs Minnie's estate advances several arguments. It argues that the first Estate Tax Closing Document should be treated as a closing agreement under section 7121 and that the Commissioner should be estopped from reopening the estate by the text of the document. Minnie's estate also argues that the examination that took place after the Commissioner had sent the first Estate Tax Closing Document was an improper second examination. The estate further argues that the effective date of section 2010(c)(5)(B) and the text of the regulations preclude the Commissioner from adjusting the DSUE amount of the predeceased spouse for gifts made before 2010. Finally, the estate argues that section 2010(c)(5)(B) as applied by the Commissioner in this case is contrary to the congressional intent to permit portability and is "unconstitutional for lack of

due process" because it overrides the statute of limitations on assessment established in section 6501.

In its reply brief Minnie's estate argues that the taxable gifts given by Minnie should not be included in the taxable estate for the purpose of determining the estate tax liability. This argument was not properly raised in the petition or the amended petition, and so it has been conceded.[4] See Rule 34(b)(4); see also Swain v. Commissioner, 118 T.C. 358, 362 (2002); Kay v. Commissioner, T.C. Memo. 2011-159, 102 T.C.M. (CCH) 19, 22 (2011). Even if it had been properly raised, under section 2001(b)(1) the taxable gifts given by Minnie are included in the value of the taxable estate for the purpose of determining the estate tax due.

I.      The Estate Tax, the DSUE, and Applicable Regulations

Section 2001 imposes a tax on the transfer of the taxable estates of U.S. citizens and residents. The tax is based on the sum of the taxable value of the

---

[4]Minnie's estate contests the full amount of the deficiency but does not discuss how the Commissioner erred in adjusting the size of the taxable estate to include the taxable gifts given by Minnie during her lifetime. The estate claims in its reply brief that it had argued in its amended opening brief that the taxable gifts should not be included in the estate. The Court does not agree. At no point in the amended petition, the amended opening brief, or the reply brief does Minnie's estate explain why the taxable gifts given by Minnie during her lifetime should be excluded from the value of the taxable estate.

estate and the amount of taxable gifts made by the decedent after 1976.  Sec. 2001(b)(1).

Section 2010 provides a "unified credit against estate tax."  This credit effectively reduces the value of the estate for the purpose of calculating the tax. Id.  It includes both the basic exclusion amount and "in the case of a surviving spouse, the deceased spousal unused exclusion amount."  Sec. 2010(c)(2).  At the time of Minnie's death the basic exclusion was $5,250,000.  Sec. 2010(c)(3); Rev. Proc. 2013-15, sec 2.13, 2013-05 I.R.B. 444, 448.

The DSUE is the lesser of the basic exclusion amount or "the excess of (i) the applicable exclusion amount of the last such deceased spouse of such surviving spouse, over (ii) the amount with respect to which the tentative tax is determined under section 2001(b)(1) on the estate of such deceased spouse."  Sec. 2010(c)(4).  If the estate of the predeceased spouse elects portability, the later-deceased spouse's estate can effectively reduce its taxable estate by the amount by which the basic exclusion exceeds the sum of the predeceased spouse's taxable estate and adjusted taxable gifts.  Secs. 2010(c)(5)(A), 2001(b)(1).

Section 2010(c)(5)(B) gives the Commissioner the power to examine the estate tax return of the predeceased spouse to determine the DSUE amount,

regardless of whether the period of limitations on assessment has expired for the predeceased spouse's estate.

At the times of both Frank's and Minnie's deaths, temporary regulations governed the administration of the DSUE. See secs. 20.2010-1T, 20.2010-2T, and 20.2010-3T, Temporary Estate Tax Regs., 77 Fed. Reg. 36157-36160 (June 18, 2012). These temporary regulations reinforce and restate the Commissioner's power to examine the return of the predeceased spouse to determine the proper DSUE amount. Sec. 20.2010-2T(d), Temporary Estate Tax Regs., 77 Fed. Reg. 36159 (June 18, 2012); sec. 20.2010-3T(d),Temporary Estate Tax Regs., 77 Fed. Reg. 36161 (June 18, 2012).

Finally, section 7602 gives the Commissioner broad discretion to examine a range of materials to "ascertain[] the correctness of any return". Under section 7602(a)(1) Congress gave the Commissioner specific authority "[t]o examine any books, papers, records, or other data which may be relevant or material". Section 7851(a)(6) provides that subtitle F, which includes section 7602, is "applicable with respect to any tax imposed by * * * title [26]". The Internal Revenue Code does not contain any provision exempting estate tax returns from section 7602. As a result, the Commissioner has the power to examine any relevant "books, papers,

records or * * * data" to determine the correctness of an estate tax return. Sec. 7602(a)(1).

Here, the Commissioner properly exercised the power conferred by sections 2010(c)(5)(B) and 7602(a)(1). He examined the return filed by the estate of the predeceased spouse. The Commissioner found that the DSUE had been overstated. He adjusted the amount of the DSUE as authorized by section 2010(c)(5)(B) and the regulations, but he did not determine that there was an estate tax deficiency for the predeceased spouse's estate.

II.    The "Estate Tax Closing Document"

Minnie's estate advances two arguments regarding why the initial Estate Tax Closing Document should bar the Commissioner's examination of the return of Frank's estate to determine the DSUE available to Minnie's estate. Minnie's estate asserts that the Court and the Commissioner should treat the Estate Tax Closing Document as a closing agreement under section 7121. The estate also argues that the Commissioner is estopped from examining the return of Frank's estate by the text of the Estate Tax Closing Document.

A.    Closing Agreement Under Section 7121

Under section 7121(a) the Commissioner is explicitly authorized to enter into written agreements "with any person relating to the liability of such person".

Agreements under section 7121 are final. Sec. 7121(b). The Commissioner cannot reopen a matter for which a closing agreement has been executed unless there is a "showing of fraud or malfeasance, or misrepresentation of a material fact". Id. The Commissioner has strict rules governing closing agreements. Under the applicable regulations only the prescribed forms, Form 866, Agreement as to Final Determination of Tax Liability, and Form 906, Closing Agreement on Final Determination Covering Specific Matters, qualify as closing agreements. Sec. 601.202(b), Statement of Procedural Rules; sec. 301.7212-1(d)(1), Proced. & Admin. Regs.

In extraordinarily rare cases, courts have bound the Commissioner to an agreement in the absence of a properly executed Form 866 or Form 906. In Treaty Pines Invs. P'ship v. Commissioner, 967 F.2d 206, 211 (5th Cir. 1992), the Court of Appeals for the Fifth Circuit held that "a tax settlement agreement is binding even if it consists only of letters of offer and acceptance; no formal stipulation of settlement, filed decision document, or closing agreement is necessary." In that case there had been a period of negotiation between the parties and a clear exchange of offer and acceptance. Here, no such negotiation took place. The Commissioner sent the initial Estate Tax Closing Document, and neither party

alleges any facts that suggest that the estate and the Commissioner engaged in any further communication until after the audit of the return filed by Minnie's estate.

There simply was no agreement between Frank's estate and the Commissioner. There is no evidence of a closing agreement. And the estate tax closing document does not bear the hallmarks of any other kind of agreement, i.e., negotiation followed by offer and acceptance.

B.      Estoppel

This Court and others have held that the doctrine of equitable estoppel can be asserted against the Commissioner but that it "should be applied against him with utmost caution and restraint." Estate of Emerson v. Commissioner, 67 T.C. 612, 617 (1977). To prevail on a claim of equitable estoppel against the Commissioner, a taxpayer must show four essential elements:

> (1) There must be a false representation or wrongful misleading silence; (2) the error must be in a statement of fact and not in an opinion or a statement of law; (3) the person claiming the benefits of estoppel must be ignorant of the true facts; and (4) he must be adversely affected by the acts or statements of the person against whom an estoppel is claimed. * * *

Id. at 617-618 (citation omitted). Minnie's estate has established none of these elements. The estate did not establish a "false representation or wrongful misleading silence" on the part of the Commissioner. The issues in this case are

questions of law and not fact, and both parties were aware of the relevant facts in this case at the relevant times. Finally, Minnie's estate has not shown that it was adversely affected in a manner that justifies estopping the Commissioner.

In cases where courts have held that a taxpayer was adversely affected and the Commissioner was estopped, the adversely affected parties would have been forced to bear the cost of taxes that they would not otherwise have borne. See, e.g., Schuster v. Commissioner, 312 F.2d 311 (9th Cir. 1962), aff'g in part, rev'g in part 32 T.C. 1017 (1959); Estate of Emerson v. Commissioner, 67 T.C. at 612. For example, estoppel may apply when a party would be forced to pay a tax twice. Estate of Emerson v. Commissioner, 67 T.C. at 618; see also Vestal v. Commissioner, 152 F.2d 132, 136 (D.C. Cir. 1945), rev'g 4 T.C. 588 (1945). Estoppel may also apply when a party with a withholding responsibility that acted in reliance on a previous Government position and received no benefit from failure to pay a tax is now required to pay a tax that would normally be borne by another. Schuster v. Commissioner, 312 F.2d at 317-318; see also Estate of Emerson v. Commissioner, 67 T.C. at 620. Here, there is no risk of double taxation, and there are no facts showing that either estate acted in reliance on the Estate Tax Closing Document. In this case estoppel cannot be applied against the Commissioner.

III.     Improper Second Examination

Without citing section 7605(b), which protects taxpayers from an impermissible second examination, the estate argues that there was an impermissible second examination of the return filed by Frank's estate.  Instead they cite Woodworth v. Kales, 26 F.2d 178 (6th Cir. 1928).  The estate claims that the principle in Woodworth has not been overruled, but in 1931 the Supreme Court rejected the rationale adopted in Woodworth in Burnet v. Porter, 283 U.S. 230 (1931), holding that the Commissioner could reopen a case after an initial examination.  This Court explicitly adopted that position in Estate of Meyer v. Commissioner, 58 T.C. 69, 71-72 (1972).  See also Estate of Bommer v. Commissioner, T.C. Memo. 1995-197, 69 T.C.M. (CCH) 2541, 2545 (1995).

Many of the facts in Estate of Meyer mirror the facts in this case.  After the estate filed a return and the Commissioner conducted an initial audit, the Commissioner issued an "Estate Tax Closing Letter" to the estate.  Id. at 70.  The estate tax closing letter stated that the estate had paid the taxes that were owed and that the liability of the estate had been discharged.  Id.  The Commissioner, using information gleaned from audits of two other unrelated taxpayers, decided to reopen the audit and determine a deficiency.  Id.  The Court found that the Commissioner properly exercised his authority.  Id. at 71.

Congress also intervened in 1921 with statutory protection against impermissible second examinations. Revenue Act of 1921, ch.136, sec. 1309, 42 Stat. at 310 (currently codified as section 7605(b)). Section 7605(b) provides that "[n]o taxpayer shall be subjected to unnecessary examination or investigation, and only one inspection of a taxpayer's books of account shall be made for each taxable year unless the taxpayer requests otherwise or unless the Secretary, after investigation, notifies the taxpayer in writing that an additional inspection is necessary."

Here, it is clear that there was no second examination. We have held that the Commissioner does not conduct a second examination when he does not obtain any new information. See, e.g., Ballantine v. Commissioner, 74 T.C. 516 (1980); Jackson v. Commissioner, T.C. Memo. 1982-556, 44 T.C.M. (CCH) 1213 (1982). In Hough v. Commissioner, 882 F.2d 1271 (7th Cir. 1989), aff'g T.C. Memo. 1986-229, the Court of Appeals for the Seventh Circuit affirmed our conclusion that there was no second examination when the taxpayer failed to meet his burden to show that there was a second examination of his books of account, and the Commissioner issued a notice from the returns already in his possession. Id. at 1276-1277. The Commissioner did not request additional information from Frank's estate, and consequently there was no second examination.

Even if the Commissioner had conducted a second examination of the return for Frank's estate, he would not have violated section 7605(b) as to Minnie's estate. The Tax Court and others have found that only the examined party is protected from second examinations. See United States v. Krilich, 470 F.2d 341, 350 (7th Cir. 1972) ("[Section 7605] does not apply to third-party investigations, but rather to the records of the taxpayer[.]"); Curtis v. Commissioner, 84 T.C. 1349, 1353 (1985) ("It is clear that section 7605(b) does not restrict * * * [the Commissioner] in his inspections of the books of third parties."); United States v. Wood, 435 F. Supp. 870, 874 (W.D. Ky. 1977) ("26 U.S.C. § 7605(b) does not apply to a third person other than the taxpayer."). Here, the party that is claiming protection against the effects of a purported "second examination" (i.e., Minnie's estate) was not the party that underwent the examination (i.e., Frank's estate).

IV. Adjustments Under Section 2010(c)(5)(B) and Applicable Regulations With Respect to Gifts Given Before 2010

Minnie's estate makes two arguments based on its interpretation of the statutory text and regulations governing the DSUE. The estate argues that the Commissioner does not have the power to examine the return of Frank's estate again because the DSUE has not been applied to a taxable gift transfer and that the

effective date of section 2010 precludes the Commissioner from adjusting the taxable estate by the gifts made before 2010.

A.      Application of the DSUE Regulations

To support the claim that the regulations prohibit the Commissioner's action, the estate cites section 25.250[5]-2(e), Gift Tax Regs., relating to the application of the DSUE to taxable gift transfers. This regulation, and its predecessor temporary regulation, states that the Commissioner's "authority to examine returns of a deceased spouse applies with respect to each transfer by the surviving spouse to which a DSUE amount is or has been applied." Sec. 25.2505-2T(e), Temporary Estate Tax Regs., 77 Fed. Reg. 36163 (June 18, 2012). The estate argues that because the DSUE was not applied to a "taxable gift transfer" the Commissioner is not authorized to examine the return. This is irrelevant.

Under section 2010(c)(5)(B) the Commissioner has the power to examine the return filed by the estate of the predeceased spouse to determine the DSUE amount. The Commissioner's "authority to examine returns of a deceased spouse applies with respect to each transfer by the surviving spouse to which a DSUE amount is or has been applied." Sec. 20.2010-3T(d), Temporary Estate Tax Regs., supra. Although there was no taxable gift transfer to which the DSUE was applied, there is a taxable transfer to which the DSUE has been applied: the

transfer of the estate. Consequently, the Commissioner has the power under section 2010(c)(5)(B) to examine the return filed by Frank's estate for the purpose of determining the DSUE available to Minnie's estate.

B.    The Effective Date of Section 2010

The estate argues that because the gifts at the center of this case were given before the effective date of section 2010(c)(5)(B), the Commissioner cannot make adjustments to the DSUE as a result of those gifts.

The Tax Relief, Unemployment Insurance Reauthorization, and Job Creation Act of 2010, Pub. L. No. 111-312, sec. 303, 124 Stat. at 3304, did several things. As is principally relevant here, subsection (a) created section 2010(c)(5)(B). Subsection (b) made amendments to section 2505, a gift tax provision. As for effective dates, subsection (c) provided that "amendments made by this section shall apply to estates of decedents dying and gifts made after December 31, 2010." The estate takes this to mean that the Commissioner cannot adjust the DSUE on the basis of the gifts given before December 31, 2010.

When examining a return, the Commissioner must apply the law in effect for the return that is being examined. Effective dates can vary in their application, sometimes applying for years beginning or ending after a particular date, or for returns filed after a particular date. In context, it is clear that the effective date of

section 2010(c)(5)(B), the estate tax amendment, is for decedents dying after December 31, 2010. The effective date for the gift tax provision, which has no relevance here, is for gifts made after December 31, 2010. Because both Frank and Minnie died after December 31, 2010, section 2010(c)(5)(B) applies to both their estates.

## V. Congressional Intent and Due Process Concerns

Finally, the estate argues that section 2010(c)(5)(B) as applied by the Commissioner in this case is contrary to the congressional intent of portability and "unconstitutional for lack of due process" because it overrides the statute of limitations on assessment established in section 6501.

### A. Congressional Intent as to Portability

Minnie's estate claims that the Commissioner's application of section 2010(c)(5)(B) in this case is "unfair" and "defeats Congressional intent as to portability." The Supreme Court has held that the statutory text is the most persuasive evidence of congressional intent. United States v. Am. Trucking Ass'ns, Inc., 310 U.S. 534, 542-543 (1940). Congress adopted a statute that explicitly gave the Commissioner the power to examine the returns of the predeceased spouse and adjust the amount of the DSUE outside of the period of limitations under section 6501. See sec. 2010(c)(5)(B). This is a clear indication

that the Commissioner's exercise of this power is not in violation of congressional intent.

B. Statute of Limitations and Due Process Considerations of Section 2010(c)(5)(B)

Minnie's estate argues that section 2010(c)(5)(B) is "unconstitutional for want of due process of law in that there is no statute of limitations." The statute of limitations on assessment under section 6501 is not subverted by section 2010(c)(5)(B). Under section 2010(c)(5)(B) the Commissioner can examine the return of a predeceased spouse and adjust the DSUE without regard to the statute of limitations in section 6501. Section 2010(c)(5)(B) does not give the Commissioner the power to assess any tax against the estate of the predeceased spouse outside of the period of limitations. Both the temporary and final regulations implicitly make this point, providing that the IRS "may examine returns of each of the surviving spouse's deceased spouses whose DSUE amount is claimed to be included in the surviving spouse's applicable exclusion amount, regardless of whether the period of limitations on assessment has expired for any such return." Sec 20.2010-2(d), Estate Tax Regs.; sec. 20.2010-2T(d), Temporary Estate Tax Regs., 77 Fed. Reg. 36159-36160 (June 18, 2012). And they both go on to provide more explicitly:

> The IRS's authority to examine returns of a deceased spouse applies with respect to each transfer by the surviving spouse to which a DSUE amount is or has been applied. Upon examination, the IRS may adjust or eliminate the DSUE amount reported on such a return [of a deceased spouse]; however, the IRS may assess additional tax on that return only if that tax is assessed within the period of limitations on assessment under section 6501 applicable to the tax shown on that return.

Sec. 20.2010-3(d), Estate Tax Regs.; sec. 20.2010-3T, Temporary Estate Tax Regs., supra (with the bracketed text added to the final regulation). And finally, both the temporary and final regulations cite section 7602 "for the IRS's authority, when ascertaining the correctness of any return, to examine any returns that may be relevant or material to such inquiry."

Section 6501 is a statute of limitations on assessment. It provides that "except as otherwise provided * * * the amount of any tax imposed by this title shall be assessed within 3 years after the return was filed". Sec. 6501(a). Here, the Commissioner did not assess and is not assessing any tax against Frank's estate. Both Estate Tax Closing Documents show "$0" in "Net Estate Tax" for Frank's estate. The Commissioner did not issue a notice of deficiency to Frank's estate. An adjustment of the DSUE of the predeceased spouse, though it may affect the liability for a subsequent estate claiming the exclusion, is not an assessment of tax against the estate of the predeceased spouse. Accordingly, the

statute of limitations on assessment under section 6501 is not implicated for the predeceased spouse.[5]

Conclusion

The Commissioner acted within his legal authority when he examined the return filed by Frank's estate and adjusted the DSUE eligible to be claimed by Minnie's estate. And Minnie's estate must include the lifetime taxable gifts in the estate for the purposes of determining the amount of estate tax due under section 2001(b)(1).

To reflect the foregoing,

Decision will be entered for

respondent.

---

[5]Conceptually, this is the same as section 6214(b), which permits this Court to look to years not at issue and to facts related to other years in order to determine the correct amount of the tax for the year before it. This provision does not violate the statute of limitations on assessment under section 6501 any more than section 2010(c)(5)(B).